**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 24 C 12487 |
| | ) ) | Judge Charles P. Kocoras |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This case arises out of the alleged infringement of Plaintiff Milwaukee Electric

Tool Corporation's ("Milwaukee") trademarks by over 80 defendants, including

Defendants Komifolen Store, SunLie, and YFSJ Direct ("Moving Defendants"). On

December 31, 2024, the Court entered a preliminary injunction order, enjoining all

named defendants from selling the contested products. Before the Court is Moving

Defendants' motion to vacate the preliminary injunction and to lift the ordered asset

restraint [37]. For the reasons set forth below, Moving Defendants' motion is denied.

**BACKGROUND**

The Court presumes familiarity with the undisputed facts that form the basis of

Milwaukee's claims as set forth in the Court's May 28, 2025 Memorandum Opinion,

Dkt. # 156, and addresses herein only the facts necessary for resolution of the instant motion.

The procedural posture in this case is similar to other Schedule A cases that are filed in this district. Milwaukee initiated this action and filed a motion for a temporary restraining order on December 5, 2024. We entered an order granting the motion on December 6, 2024. Dkt. # 22. The temporary restraining order was set to expire on December 20, 2024. However, on December 17, 2024, Milwaukee moved to extend the temporary restraining order through January 3, 2025. We promptly granted that motion as well. Dkt. # 25. On December 30, 2024, Milwaukee filed a motion for entry of a preliminary injunction. We granted that motion and entered the preliminary injunction order on December 31, 2025. Dkt. # 35. Moving Defendants now seek an order vacating the preliminary injunction and lifting the imposed asset restraint.

## LEGAL STANDARD

Preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). One should only be granted in cases "clearly demanding it." *See Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000).

To prevail on a motion for preliminary injunction, a movant must show that: (1) there is a reasonable likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) that it will suffer irreparable harm absent a

2

preliminary injunction. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023).

If the moving party meets this threshold showing, the Court engages in a balancing test that "weighs the harm the denial of the preliminary injunction would cause to the [movant] against the harm to the defendant if the court were to grant it." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). The Seventh Circuit has described this balancing test as a sliding scale: "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). Finally, the Court considers whether the injunction is in the public interest, which includes taking into account any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

"[A]ny injunction issued by a court of equity is itself subject to later modification." *St John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 627 (7th Cir. 2007) (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992); additional citation omitted)). Courts in this district consider the same factors for dissolving a preliminary injunction as those applied when granting or denying it in the first place. *See*, *e.g.*, *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 2022 WL 17176498, at *1–

2 (N.D. Ill. 2022). "The court asks whether 'the expected cost of dissolving the injunction--considering the probability that dissolution would be erroneous because the plaintiff really is entitled to injunctive relief, and the consequences of such an error--[is] greater or less than the expected cost of not dissolving the injunction.' 'If greater, the injunction should not be dissolved; if less, it should be.'" *Id.* (quoting *Centurion Reinsurance Co. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987)).

## DISCUSSION

Because we granted the preliminary injunction on an *ex parte* basis, Milwaukee carries the burden of persuading the Court that it should not disturb the injunction. *See JH v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2025 WL 1262503, at \*4 (N.D. Ill. 2025). Moving Defendants argue the preliminary injunction must be vacated because Milwaukee has neither shown a likelihood of success on the merits nor demonstrated irreparable harm, and they did not receive proper notice. Moving Defendants also ask the Court to lift the asset restraint. We address each argument in turn.

### I. Likelihood of Success on the Merits on Trademark Infringement Claim

To obtain a preliminary injunction, Milwaukee must show that there is a likelihood of success on the merits of its claims. *See Speech First*, 968 F.3d at 637 (to obtain a preliminary injunction, a party must show, among other things, that he has some likelihood of success on the merits of his claims). This analysis does not demand

that Milwaukee state with legal certainty that it will win the case. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020) ("at such a preliminary stage, the applicant need not show that it definitely will win the case"). Rather, Milwaukee must provide the Court with a roadmap on how it intends to prove each element of the claim. *Id.* To be sure, this distinction does not lessen the burden on Milwaukee to show why it is entitled to a preliminary injunction. To prevail, Milwaukee must make a "strong showing that reveals how [Milwaukee] proposes to prove its case." *Bevis*, 85 F.4th at 1188. "A mere possibility or better than negligible chance of success is not enough." *Staffing Servs. Ass'n of Ill., v. Flanagan*, 2025 WL 1475493, at *3 (N.D. Ill. 2025).

A *prima facie* case of infringement requires Milwaukee to show (1) its mark is distinctive enough to be worthy of protection; (2) Moving Defendants are not authorized to use the mark; and (3) Moving Defendants' use of the trademark causes a likelihood of confusion as to the origin or sponsorship of Moving Defendants' products. *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496–97 (7th Cir. 2001). The second factor is easily met because it is clear from Milwaukee's briefings that it has not authorized Moving Defendants to use their protected marks. Therefore, only the first and third elements require an in-depth analysis.

A trademark owner can show that mark is distinctive in one of two ways: (1) that the mark is "inherently distinctive," meaning it identifies the maker of a product, but does not describe the product itself, or (2) that the mark has acquired a "secondary meaning," which occurs when a mark is uniquely associated with the original seller.

*Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 (7th Cir. 2019). Milwaukee states

that it has used its marks for over 90 years and has essentially become a household name

associated with high quality products. Milwaukee also states that it is the official source

of Milwaukee products and the marks signal to consumers that the products come from

Milwaukee. We view these statements as evidence showing that the "Milwaukee" mark

is inherently distinctive.

We now turn to the likelihood of confusion analysis. The overarching question

here is "whether consumers, and specifically consumers who would use either product,

would be likely to attribute them to a single source." *Sorensen v. WD–40 Co.*, 792 F.3d

712, 726 (7th Cir. 2015) (quotation marks omitted). The Seventh Circuit utilizes a

seven factor test to determine likelihood of confusion: "(1) the similarity between the

marks in appearance and suggestion; (2) the similarity of the products; (3) the area and

manner of concurrent use; (4) the degree of care likely to be exercised by consumers;

(5) the strength of the plaintiffs mark; (6) any evidence of actual confusion; and (7) the

intent of the defendant to 'palm off' his product as that of another." *Id*. The Seventh

Circuit has advised that while none of the factors are dispositive, the similarity of the

marks, the intent of the defendant, and evidence of confusion are the most important

considerations. *Id*.

The similarity of the marks can hardly be questioned. A side-by-side

comparison to the authentic Milwaukee products with the products sold by Moving

Defendants show that both products are virtually identical. Milwaukee has also

established that a likelihood of confusion exists here.  Consider the below example:



It would be easy for consumers to mistake Moving Defendants' products with authentic Milwaukee products.  Milwaukee also argues that Moving Defendants' use the "MILWAUKEE" word marks to give the impression that Moving Defendants' counterfeit batteries and battery charges are sponsored by or endorsed by Milwaukee. We agree.  Considering the extreme similarity between the products, Moving Defendants' statements that the batteries are "compatible with Milwaukee" products could lead a consumer to believe that they are sponsored by Milwaukee in some way. Furthermore, the product listings evince an intent to "palm off" Moving Defendants'

products as genuine Milwaukee products. Moving Defendants' products are so similar that it reasonably creates confusion as to whether they were sponsored by Milwaukee. Milwaukee has shown that there is a likelihood of success.

Moving Defendants argue that they are not infringing on Milwaukee's trademarks because their use of Milwaukee is fair use. There are two general categories of trademarks at issue: (1) the "Milwaukee" word mark and (2) the design marks of the batteries that relate to the three-dimensional battery with a the triangular-shaped buttons and tabs on each side.

"To prevail on a fair use defense, a defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith." *Sorensen*, 792 F.3d at 722. Here, Moving Defendants have not met their burden of showing that they are entitled to a fair use defense.

"Words or phrases function as trademarks when [they are] used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 596 (7th Cir. 2019) (internal quotations omitted). "We look to multiple factors in how a defendant employs a challenged term or phrase to determine whether it serves as a source indicator and therefore is used as a trademark." *Id*.

Looking at Moving Defendants' product listing, Moving Defendants' use of the Milwaukee mark could lead consumers to believe that it is a source indicator. For instance, here is Komifolen's listing:



The Milwaukee mark is featured six times; "Komifolen" is only mentioned once. It is more than reasonable to assume that a consumer could be misled about the origin of the product. This is further underscored by the product's description:

9





The product description does not mention the Komifolen name at all. The remaining Moving Defendants' product listing are also similar to Komifolen's and therefore fail to establish fair use for similar reasons.

Moving Defendants also attempt to invoke the nominative fair use affirmative defense, but as explained in our May 28, 2025 Memorandum Opinion, Dkt. # 156, the Seventh Circuit has not adopted the Ninth Circuit's nominative fair use defense. Accordingly, Moving Defendants are unable to rely on this defense here.

Lastly, Moving Defendants attempt to argue that their use of the Milwaukee trademarks is functional. That defense also fails. A product feature is functional, 'if it

11

is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001). As Milwaukee explains, the red color of the buttons on the batteries are not functional. Moving Defendants could have chosen any other color or design for their products, and they still would function the same. Thus, Moving Defendants cannot overcome Milwaukee's showing that there is a likelihood of success on the merits.

## II.    Irreparable Harm

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001). As such, irreparable harm is generally presumed in trademark infringement cases. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *see also Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 18 (7th Cir. 1992). Moving Defendants, however, argue that the preliminary injunction should be vacated because Milwaukee's delay in filing its case against Defendant YFSJ Direct undermines any claim of irreparable harm related to the alleged infringement. More specifically, Moving Defendants assert that Milwaukee's claims of irreparable harm ring hollow when faced with the fact that Milwaukee was purportedly aware of YFSJ Direct's allegedly infringing conduct at least as early as November 2023, yet did not file this case until December 5, 2024.

A lengthy delay in seeking relief can call into question "how urgent the need for

[preliminary] equitable relief really is." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011); *see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) ("[D]elay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered."); *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 953–54 (N.D. Ill. 2018). However, "the length of delay, on its own, is not dispositive." *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F. Supp. 3d 891, 910 (N.D. Ill. 2019); *see also Chancey v. Ill. State Bd. of Elections*, 635 F. Supp. 3d 627, 643 (N.D. Ill. 2022) ("[D]elay is only one among several factors to be considered; [the case law does] not support a general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction."). YFSJ Direct is not the only defendant in this case—there are 83 others. If Milwaukee were to immediately file a separate case each time it discovered potential infringement, the result would be an onslaught of individual cases, which would in turn place a severe strain on the already limited resources of the Court and unnecessarily increase the workload and costs for all parties. Furthermore, infringement cases of this particular nature are time-intensive and require extensive investigation and preparation before filing. Common sense and the principles of judicial economy and fairness favor a more considered, streamlined approach, which Milwaukee took here. Milwaukee's delay as to this one defendant does not rebut the presumption of irreparable harm.

### III.    Balancing of the Harms and the Public Interest

Given the evidence supporting a finding that Moving Defendant's conduct was willful, the balance of hardships favors Milwaukee.  *See Bulgari, S.p.A. v. P'ships & Unincorporated Ass'ns Identified On Schedule "A"*, 2014 WL 3749132, at *6 (N.D. Ill. 2014), *report and recommendation adopted*, 2014 WL 3765854 (N.D. Ill. 2014).  The public interest also favors Milwaukee, because "enforcement of the trademark laws prevents consumer confusion," *Eli Lilly & Co.*, 233 F.3d at 469, and consumers have a legitimate "interest in knowing with whom they do business."  *Re/Max N. Cent.*, 272 F.3d at 433.

### IV.    Proper Notice

Moving Defendants also argue the preliminary injunction must be vacated because they did not receive proper notice and were not afforded an opportunity for a hearing on the matter.  In the Court's view, the compelling nature of the case and strong likelihood of success on the merits warranted quick action.  Milwaukee served Moving Defendants with the motion for a preliminary injunction on December 30, 2024.  Moving Defendants, having filed their appearances on December 27, 2024, were already aware of the lawsuit and undoubtedly anticipated the motion given the traditional progression of this type of case.  While Milwaukee's motion was granted swiftly, it was not granted within 24 hours of its filing.  Again, the Court is mindful that, because it granted Milwaukee a preliminary injunction on an *ex parte* basis under circumstances that closely resembled a TRO, and without the benefit of adversarial

briefing, Milwaukee bears the burden of persuading the Court that it should not disturb the injunction. *See Jiaxing Zichi Trade Co. v. Yang*, 2021 WL 4498654, at *3 n.3 (N.D. Ill. 2021) (citing 42 Am. Jur. 2d Injunctions § 291 ("[W]hen a temporary injunction is issued under circumstances resembling a temporary restraining order, the burden of proof may be on the party seeking the order.")). Milwaukee has met its burden. Ultimately, by virtue of the instant motion, Moving Defendants were provided the opportunity to voice their objections and present their arguments, which the Court has dutifully analyzed and rejected as discussed above.

## V. Asset Restraint and Bond

Finally, Moving Defendants request a limitation on the asset restraint imposed by the preliminary injunction. Milwaukee argues that we should deny the request because of the limited value of assets have compared to the amount of profit made by selling the allegedly infringing products. Milwaukee alleges that collectively, Defendants Komifolen Store, SunLie, and YFSJ Direct sold 3,443 of the contested products for $311,852.01 but only have $112,828.34 in frozen assets. Based on this representation—which Moving Defendants do not dispute in their reply brief—the Court sees no reason to reduce or lift the asset restraint.

## CONCLUSION

For the reasons stated above, Defendants Komifolen Store, SunLie, and YFSJ

Direct's motion to vacate the preliminary injunction [37] is denied.  It is so ordered.


Dated: 6/13/2025

Charles P. Kocoras
United States District Judge