UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) 24 C 12487 |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Milwaukee Electric Tool Corporation ("Milwaukee") initiated this "Schedule A" action against over 80 foreign e-commerce vendors, asserting claims of trademark infringement, counterfeiting, and violations of the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. Default judgment was entered against those Defendants that failed to appear or otherwise respond to the complaint. Before the Court is the joint motion to vacate the default judgment filed by six of those Defendants—Footstone, meijinkejidian, AGUNION,[1] Yiweibei, huayizhinengkeji, and

---

[1] Milwaukee refers to Defendant AGUNION as "seork." Nonetheless, this entity is listed as Defendant No. 42 in the Schedule A.

New&Beauty (collectively, "Moving Defendants"). For the reasons set forth below, the motion is denied.

## BACKGROUND

Milwaukee initiated this action on December 5, 2024. The numerous defendants listed in the Schedule A included various corporations, limited liability companies, partnerships, and unincorporated associations allegedly engaged in the unauthorized sale of products bearing or infringing on Milwaukee's trademarks.

On the same day, Milwaukee moved ex parte for a temporary restraining order ("TRO"), permission to serve process by electronic means, and related relief. The Court granted those motions on December 6, 2024, authorizing service via email and electronic publication pursuant to Federal Rule of Civil Procedure 4(f)(3). Milwaukee later filed a motion for preliminary injunction, which the Court granted.

Thereafter, Milwaukee moved for entry of default and default judgment against Defendants who had not appeared or responded. That motion was subsequently granted and default judgment was entered against the non-appearing Defendants.

On June 2, 2025, Moving Defendants filed the instant motion to vacate the default judgment. Dkt. # 160. They seek to void the February 20, 2025 default judgment pursuant to the Hague Convention and Rule 60(b)(4) or, alternatively, to vacate the judgment under Rule 60(b)(1). [2]

---

[2] Moving Defendants also reference Rule 60(b)(6) in passing, which allows relief from judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). However, Moving Defendants offer no substantive analysis as to why this case presents the type of "extraordinary circumstances"

2

## **LEGAL STANDARD**

Rule 55(c) states that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Under Rule 60(b)(4), relief from a judgment or order is appropriate when the judgment is void. Fed. R. Civ. P. 60(b)(4). "When a district court enters default judgment without personal jurisdiction over the defendant, the judgment is void, and it is a per se abuse of discretion to deny a motion to vacate that default judgment." *Be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011).

Under Rule 60(b)(1), a default judgment can be vacated if a party shows "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Seventh Circuit has clarified that relief under Rule 60(b) may only be granted "under exceptional circumstances." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012). Specifically, "to have a default judgment vacated, the moving party must demonstrate: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Id.* (cleaned up). The established policy is to favor "trial on the merits over default judgment." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009). Above all, though, district courts are given "considerable latitude" in deciding whether to vacate (or not) a default judgment. *Wehrs*, 688 F.3d at 890; *see also Cracco*, 559 F.3d at 630.

---

contemplated by this subsection of the Rule. Because the Court denies their motion for the reasons set forth in this order, it finds that relief under Rule 60(b)(6) is also unwarranted.

3

**DISCUSSION**

I.    **Rule 60(b)(4)**

Moving Defendants argue that the Hague Convention ("Convention") renders the default judgment against them void under Rule 60(b)(4) for two primary reasons: (1) email service is barred by the Convention; and (2) even assuming email service on December 30, 2024 was proper, Article 15 of the Convention bars entry of default judgment until six months have elapsed following transmission of the service documents.

In response, Milwaukee contends that service was proper under Rule 4(f)(3) and authorized by the Court's TRO. Milwaukee further maintains that the Convention does not displace Rule 4(f)(3), and that email service is not prohibited under international law.

At the outset, the Court notes that it authorized Milwaukee to effectuate electronic service upon Defendants under Rule 4(f)(3) on December 6, 2024. Moving Defendants do not dispute that the Summons, TRO, Complaint, and Motion for Entry of a Preliminary Injunction were emailed to the Moving Defendants on December 30, 2024, and Milwaukee's certificate of service confirms this *See* Dkt. # 178, at 10; *see also* Dkt. # 63; Dkt. # 178-3; Dkt.# 89.[3] On February 18, 2025, Milwaukee filed its

---

[3] Indeed, Moving Defendants admit that they "engaged legal counsel to contact Milwaukee in January 2025 to negotiate settlement . . ." Dkt. # 161-3, ¶ 5.

4

motion for entry of default and default judgment, which the Court granted shortly thereafter.

In this district, the "overwhelming majority of courts" have concluded "that the Convention does not prohibit service [in China] by email" in Schedule A cases. *Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 347 F.R.D. 316, 330 (N.D. Ill. 2024) (internal quotations omitted) (citing *Klauber Bros., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 2024 WL 182209, at *3 (N.D. Ill. 2024)), *appeal dismissed sub nom. Peanuts Worldwide LLC v. Electrician Guy*, 2024 WL 5297821 (7th Cir. 2024). The Court finds no reason to depart from the well-reasoned approach taken by its colleagues and concludes that service by email is proper under Rule 4(f)(3) and not prohibited by the Convention.

Next, the Court finds that Article 15's six-month waiting period is inapplicable under these circumstances. Article 15 states in full:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that –
>
> (a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
>
> (b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention, and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

5

> Each contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled –
>
> (a) the document was transmitted by one of the methods provided for in this Convention,
>
> (b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
>
> (c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

20 U.S.T 361, Art. 15

"The six-month waiting period mandated by subparagraph (b) of the second paragraph applies only in those instances where 'no certificate of service or delivery has been received.'" *White v. Ratcliffe*, 285 Ill. App. 3d 758, 768 (2d Dist. 1996). Here, Milwaukee filed a certificate of service with this Court prior to the entry of default judgment, which renders second paragraph of Article 15 inapplicable.

Moving Defendants rely on *Celine S.A. v. P'ships & Unicorporated Ass'ns Identified on Schedule "A"*, 2025 WL 712484 (N.D. Ill. 2025), in support of their position that Article 15 requires at least a six-month waiting period from the time of service before a default judgment may be entered. The *Celine* court vacated the default judgment as void under Article 15, finding that judgment had been entered within six months of the date on which the defendant was served. Although that opinion does not mention whether the certificate of service was filed, a review of the docket indicates

6

that no certificate of service was filed prior to the entry of default in that case. Thus, the case is distinguishable. Because Milwaukee filed a certificate of service prior to the entry of default judgment, only the first paragraph of Article 15 needed to be satisfied before entry of the default judgment. *See White*, 285 Ill. App. 3d at 768.

Under the first paragraph of Article 15, prior to the entry of a default, the Court must determine "(1) that service was proper under the internal law of the country where the defendant is to be served; (2) that the document was actually delivered to the defendant; and (3) that service was effected in sufficient time for the defendant to defend." *Id*.

First, Moving Defendants do not dispute that the summons was received. They predominately assert that service was void under the Convention. As noted above, the majority of courts in this district have found that service by email is proper in similar Schedule A cases. Furthermore, under certain circumstances, China permits email service and "[m]ost notably, Chinese law permits its courts to order service by email on a party outside of China." *Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2021 WL 1222783, at *4 (N.D. Ill. 2021). As one court opined, "[i]f China permits its courts to order service of Chinese process by email on defendants outside China, it cannot credibly object to U.S. courts ordering the same on defendants located in China." *Id*.

Second, Moving Defendants were served on December 30, 2024, as evidenced by the summons and certificate of service. Third, Moving Defendants acknowledge

7

that they became aware of this lawsuit shortly after service, as reflected in their participation in settlement negotiations in January 2025, and therefore had sufficient opportunity to defend. Accordingly, because all three requirements of the first paragraph of Article 15 are satisfied, the Court concludes that entry of default judgment against Moving Defendants was proper under the Convention. *White*, 285 Ill. App. 3d at 768.

Moving Defendants also argue that service of process fails to comport with (1) the Federal Rules of Civil Procedure and (2) Due Process.[4] Moving Defendants first contend that Milwaukee was required to obtain separate summons for each Defendant listed in Schedule A under Rules 4(b) and 10(a). This argument lacks merit.

"Rule 4(b) specifically contemplates a single summons addressed to multiple defendants, and Rule 10(a)'s caption requirement relates to pleadings, not the summons." *Peanuts Worldwide LLC*, 347 F.R.D. at 323 (internal quotations omitted). Here, the Court authorized and directed the Clerk of Court "to issue a single original summons in the name of '1104035590 and all other Defendants identified in the Complaint' that shall apply to all Defendants." Dkt. # 22, at 10. Milwaukee's concurrently filed Schedule A identifies each Defendant individually, in accordance

---

[4] At the end of their motion, Moving Defendants argue that service of process violated the Federal Rules of Civil Procedure and Due Process, presenting these assertions as additional grounds for relief under the "meritorious defense" standard. The Court will instead address them under the appropriate Rule 60(b)(4) standard.

8

with customary practice in this district. Thus, the Court finds no procedural defect in the summons under Rule 4(b) or Rule 10(a).

Moving Defendants' due process arguments are equally without merit. "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (internal quotations omitted). Here, Moving Defendants engaged in settlement negotiations shortly after being served. They also marketed their products (and presumably communicated with consumers) in the U.S. in English. Thus, any assertion that their due process was violated because of a language barrier is unfounded under these circumstances. *See, e.g.*, *Singh v. Holder*, 749 F.3d 622, 626 (7th Cir. 2014) ("In the immigration context, personal service in English to a non-English-speaker typically satisfies due process because it puts the alien on notice that further inquiry is needed, leaving the alien to seek help from someone who can overcome the language barrier.").

## II.     Rule 60(b)(1)

In the alternative, Moving Defendants seek relief under Rule 60(b)(1), claiming excusable neglect and the existence of meritorious defenses. They argue that they did not receive notice of the Court's default judgment until May 1, 2025, and moved to vacate within one month. As to the merits, Moving Defendants assert a nominative fair

9

use defense, contending that their use of the MILWAUKEE mark was limited to compatibility references and did not suggest sponsorship.

In response, Milwaukee argues Moving Defendants are unable to establish good cause or quick action. As to the defenses, Milwaukee contends that Moving Defendants sold counterfeit MILWAUKEE products and used identical marks in a manner likely to cause consumer confusion. Milwaukee further rejects the fair use defense, asserting that the Seventh Circuit has not adopted nominative fair use.

Rule 60(b)(1) provides that the Court may relieve a party from final judgment for, among other reasons, "excusable neglect." Fed. R. Civ. P. 60(b)(1). "The Supreme Court has adopted a flexible understanding of excusable neglect that encompasses all relevant circumstances surrounding the party's omission." *Casio Computer Co. v. Noren*, 35 F. App'x 247, 250 (7th Cir. 2002) (internal quotations omitted). To prevail under this subsection, the defendant must show "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630 (7th Cir. 2009) (citation omitted). A defendant's failure to make any one of these showings is a sufficient reason to deny relief. *See Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) ("Imperial failed to clear the first hurdle when it did not show good cause for its default. This would have been sufficient basis to refuse to vacate Imperial's default, even if it had a meritorious defense.").

Moving Defendants state there is good cause to vacate the default judgment because they did not become aware of the Court's entry of default judgment in this case until May 1 2025. Apart from this claim, Moving Defendants offer no explanation for their failure to file an appearance or answer the complaint prior to the entry of default judgment. Moving Defendants engaged legal counsel to contact Milwaukee in January 2025 to negotiate settlement of this litigation after being served in late December 2024. Moving Defendants were apprised of their obligation to respond to the complaint upon receipt of the summons and were fully capable of filing an answer or seeking an extension of time from the Court. However, they did not do so.

Moving Defendants also fail to establish that they took prompt action to vacate the default judgment. According to Moving Defendants, they first became aware of the February 20, 2025 default judgment on May 1, 2025. However, on April 6, 2025, Moving Defendants received Notices from Amazon regarding transfers of funds to Milwaukee. Dkt. # 161-3, ¶ 6. Nonetheless, Moving Defendants assert they did not learn of the judgement until May 1, 2025. Moving Defendants then filed the instant motion on June 2, 2025. Even assuming Moving Defendants did not learn of the default judgement until May 1, 2025, courts have denied motions to vacate after as little as three weeks, *Sullivan v. Gen. Plumbing, Inc.*, 2007 WL 1030236, at *4 (N.D. Ill. 2007), and courts in this district have found delays of four, six, and nine weeks unreasonable in other Schedule A cases. *See Chapter 4 Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2021 WL 1906461 (N.D. Ill. 2021) (finding four weeks

11

unreasonable); *Fairly Odd Treasures, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2020 WL 8093511, at *2 (N.D. Ill. 2020) (six weeks unreasonable); *Peanuts Worldwide*, 347 F.R.D. at 326 (nine weeks unreasonable). Under these circumstances, Moving Defendants' four- to eight-week delay cannot be characterized as "quick action."

Because the Court concludes Moving Defendants have not met their burden of showing good cause or prompt action, it need not address their arguments regarding a meritorious defense. *See Chapter 4 Corp.*, 2021 WL 1906461, at *3 ("The Court need not reach the merits of Defendant's Motion because it suffices that it cannot show either good cause or quick action . . . [E]ven if a meritorious defense exists it cannot excuse carelessness.").

## CONCLUSION

For the foregoing reasons, Moving Defendants' motion to vacate the default judgment [160] is denied.

It is so ordered.

Charles P. Kocoras
United States District Judge

Dated: 11/3/2025